UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br><br>Defendant. | Case No. 8:04-cv-01862-SDM-MSS |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Fed. R. Civ. P. 56, Defendant Wal-Mart Stores, Inc. (hereinafter "Wal-Mart" or "Defendant") moves for partial summary judgment against Plaintiff United States Equal Employment Opportunity Commission (hereinafter "EEOC" or "Plaintiff") and requests that the Court find (1) Plaintiff has no standing to assert a claim for monetary damages on behalf of Claimant Linda Gliotti (hereinafter "Gliotti"), and (2) that Plaintiff be judicially estopped from asserting claims for monetary damages on behalf of Gliotti in this lawsuit. Wal-Mart also requests that the Court find that Plaintiff may not seek monetary damages in the form of back pay on behalf of Claimant Virginia Rylance (hereinafter "Rylance") in this lawsuit.

**I.     STATEMENT OF THE CASE**

Plaintiff brings this action against Wal-Mart to recover monetary damages, declaratory and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and Title I of the Civil Rights Act ("Title I"). (Complaint at "Nature of the Action".) On behalf of Gliotti (who is still employed with Wal-Mart), Plaintiff prays for monetary relief in the form of past and future pecuniary losses including but not limited to medical expenses and out of pocket losses,

compensatory damages and punitive damages. (Complaint, Prayer For Relief at ¶ D, E, and F; Gliotti at 78.) On behalf of Rylance, Plaintiff prays for monetary damages in the form of back pay, job search expenses and/or front pay, past and future pecuniary losses including but not limited to medical expenses and out of pocket losses, compensatory and punitive damages. (Complaint, Prayer for Relief at ¶ C, D, E, and F.) On behalf of Gliotti and Rylance, Plaintiff is seeking the maximum statutory caps established under 42 U.S.C. § 1981a.

Wal-Mart moves for summary judgment as a matter of law in its favor with respect to (1) Plaintiff's claims for monetary damages on behalf of Gliotti; and (2) Plaintiff's claims for back pay and/or front pay damages on behalf of Rylance. The grounds for this Motion are fully argued in the Memorandum of Law filed herewith and based upon the following Statement of Undisputed Facts taken from the record.

## II.   STATEMENT OF UNDISPUTED FACTS AS TO GLIOTTI

**Gliotti Files EEOC Charge Against Wal-Mart**

1.   On July 28, 2003, Gliotti filed a Charge of Discrimination of Discrimination with the EEOC alleging she suffered sexual harassment in violation of Title VII and the Florida Civil Rights Act ("FCRA"). (Gliotti at 124-125, Ex. 24.) Gliotti employed three attorneys including Robert Lazo, Bonnie Riggins, and Steven Dow to represent her in her filing of her Charge of Discrimination (discrimination claim) against Wal-Mart. (Gliotti at 125-127.)[1]

---

[1] On April 7, 2004, Ms. Riggins, Mr. Dow and Mr. Lazo affirmed to the Bankruptcy Court that they "[were] employed by, and did represent the debtor pre-petition for her employment discrimination case against Wal-Mart." *In re: Linda M. Gliotti, Case No. 8:03-bk-16962-PMG,* Dkt. 18. A certified copy is attached hereto.

**Eleven Days Later, Gliotti Files Voluntary Petition For Bankruptcy (Chapter 7)**

2. Eleven (11) days later, on August 8, 2003, Gliotti executed a Voluntary Petition for Bankruptcy (Chapter 7). (Gliotti at 138-143, Ex. 25 and 26.)

3. The Voluntary Petition indicates that Gliotti is represented in her bankruptcy by attorney Linda K. Thomas. On August 8, 2003, Gliotti certified on Form B1, that "I declare under penalty of perjury that the information provided in this petition is true and correct." Schedule B, Item 20 of the Voluntary Petition reads: "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to set off claims. Give estimated value of each." Gliotti checked the box **"NONE."** (Gliotti at 139, Ex. 26.) Gliotti then signed a Declaration Concerning Debtor's Schedules and certified that, "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 16 sheets, plus the summary page, and that they are true and correct to the best of my knowledge, information and belief." *Id.*

4. Statement of Affairs, Item 4, reads: **"Suits, and Administrative Proceedings, Executions, garnishments, and Attachments."** 4 a. states:

> **"List all suits and *administrative proceedings* to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case (Married debtors filing Chapter 12 or Chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed). [Emphasis Added]**

5. Although Gliotti disclosed other litigation, proving she certainly understood the question, she failed to disclose her administrative charge against Wal-Mart, filed just days before.

6. Gliotti then certified in her Statement of Financial Affairs that, "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." (Gliotti at 139.)

7. Just one (1) week later, on August 15, 2003, Gliotti filed the above described Voluntary Petition for Bankruptcy (Chapter 7) in the United States District Court for the Middle District of Florida, Tampa Division, captioned *In re: Linda M. Gliotti, Case No. 8:03-bk-16962-PMG*. (*In re: Linda M. Gliotti, Case No. 8:03-bk-16962-PMG* (hereinafter *In re: Gliotti*), Dkt. 1.)[2] A certified copy of Gliotti's Voluntary Petition, Schedule of Assets, and Statement of Financial Affairs are attached hereto.

**Bankruptcy Court Grants Gliotti "No Asset" Discharge**

8. On November 18, 2003, Chief United States Bankruptcy Judge Paul Glenn entered a Final Decree and granted a Gliotti a Discharge of Debtor under Section 727 of Title 11, United States Code (Bankruptcy Code). (Gliotti at 142-143; *In re: Gliotti*, Dkt. 6 and 7.)

**Trustee "Discovers" Pre-Petition EEOC Charge Filed By Gliotti**

9. Then, seventy-nine (79) days later, on February 5, 2004, Trustee Susan K. Woodward (hereinafter "Woodward"), filed a Motion to Revoke Final Decree and Reopen the Bankruptcy Estate. (*In re: Gliotti*, Dkt. 10.) In the Motion, Trustee Woodward averred that, "The **Trustee** has **discovered** an unscheduled sexual harassment claim, which, if administered, could be of benefit of the creditors." Trustee Woodward then moved the Court to re-open the Bankruptcy in order for **Trustee Woodward to proceed in the sexual harassment claim for the benefit of the creditors of the estate.** *Id.* Notably, the Motion does not aver that Gliotti

---

[2] Certified copies of *In re: Linda M. Gliotti, Case No. 8:03-bk-16962-PMG* (Dkt. Nos. 1, 6, 7, 10, 13, 18 and 19) are also attached hereto.

ever disclosed the bankruptcy to the Trustee. On February 18, 2004, Chief Judge Glenn granted Trustee Woodward's Motion. (*In re: Linda M. Gliotti, Case No. 8:03-bk-16962-PMG*, Dkt. 13.)

10. Then, on April 12, 2004, Trustee Woodward filed a Motion with the Bankruptcy Court requesting that Gliotti's former attorneys (Lazo, Riggins, and Dow) that represented Gliotti in her sexual harassment pre-petition EEOC Charge filed against Wal-Mart also be employed as Trustee Woodward's attorneys to "render all legal services for the Trustee in connection with a discrimination claim which is **property of the estate.**" On May 25, 2005, the Court granted Trustee Woodward's Motion. (*In re: Gliotti*, Dkt. 18 and 19.)

11. However, four months later, on August 12, 2004, Plaintiff filed its Complaint, stemming from Gliott's pre-petition EEOC Charge, seeking monetary damages on behalf of Gliotti.

12. Trustee Woodward has not intervened.

### III. STATEMENT OF UNDISPUTED FACTS AS TO RYLANCE

**Rylance Unreasonably Rejected Two (2) Unconditional Offers for Reinstatement**

13. Rylance resigned her employment with Wal-Mart Store No. 528 on January 16, 2003. (Rylance at 87.) Prior to this date, Rylance worked as a Department Manager at the rate of $10.19 per hour. (Rylance at 36; Ex. 10.)

**Unconditional Offer No. 1**

14. Within twelve (12) days, Wal-Mart unconditionally offered Rylance immediate reinstatement to her same position, at the same rate of pay, at Store No. 528, or any other Store as was her wish**,** with full back pay, benefits, attorneys' fees and costs without fear of retaliation or interaction with the alleged harasser. (Rylance at 90-92, Ex. 12.) Wal-Mart also advised Rylance that Wal-Mart had not taken any internal action to demote her, or transfer her position at any time and that her wages would be unaffected. (Rylance at 90, Ex. 12.)

15.     Rylance rejected this offer.  (Rylance at 90, Ex. 12.)

**Unconditional Offer No. 2**

16.     On March 12, 2003, Wal-Mart again unconditionally offered Rylance reinstatement to her same position, at the same rate of pay, at Store No. 528, or any other Store as was her wish, with full back pay, benefits, attorneys' fees and costs.  (Rylance at 91-92, Ex. 13.)  Wal-Mart also told Rylance that the company had taken prompt and effective remedial action with regard to the alleged harasser and that she should not fear any retaliation as such conduct was against company policy and would not be tolerated.  (Rylance at 91-92, Ex. 13.)

17.     Rylance also rejected this offer.  (Rylance at 92.)

18.     Rylance admits that when she rejected this offer that she **knew** that the alleged harasser, Sean Dolan was no longer employed with Wal-Mart.  (Rylance at 92-93.)

**Rylance Rejects Unconditional Offer No. 2 Because of Rumor**

19.     Rylance admits that the only reason she rejected this unconditional offer of reinstatement was because six (6) months **prior** to the date she left her employment with Wal-Mart (in July 2002), she heard a rumor from a girl named "Peggy" who worked in Ladies Wear, that Gliotti had started her own rumor that Store Manager Dennie Stephens had an affair with a girl named "Maria."  (Rylance at 95-96.)  Rylance then heard another rumor that because Gliotti had started the rumor about the affair, Gliotti had received Coachings for Improvements because Gliotti's Department was not "up to par."  (Rylance at 98-99.)  Rylance admits that she had no personal knowledge regarding these alleged "rumors" and based her unreasonable beliefs on hearsay.  (Rylance at 97-99.)

**Rylance's Unreasonable Mitigation Efforts**

20.     Since leaving Wal-Mart in January 2003, Rylance admits that she has chosen not to work because her husband told her that she should get a job that will enable her to pick up and be with the children after they get out of school. (Rylance at 20.)

21.     Rylance admits that she drew unemployment compensation from Wal-Mart for approximately eight (8) months. (Rylance at 19.)

22.     Since leaving Wal-Mart in January 2003, Rylance admits that she has applied for only two (2) jobs, at Fish Camp and Publix. (Rylance at 18-19.) Fish Camp offered her a position and she decided to turned it down because she did not like the hours as illustrated above. (Rylance at 18-19.) Rylance applied for these two positions approximately one year after she left her employment with Wal-Mart. (Rylance at 17-19.)

23.     Other than the two attempts described above by Rylance, she has not applied for any positions, or made any other efforts to seek employment with any other employer since her resignation from Wal-Mart in January 2003 and has remained unemployed. (Rylance at 17-19.)

IV.     **MEMORANDUM OF LAW**

A.      **STANDARD OF REVIEW**

Summary judgment will be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Defendant has the initial burden of presenting sufficient evidence demonstrating the absence of a genuine issue of material fact. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1984). To avoid summary judgment, Plaintiff cannot rest on the pleadings alone, but must present "specific facts showing a genuine issue of material fact for trial." *Celotex*, 477 U.S. at 324.

### B. ORDINARY JUDICIAL PRINCIPLES APPLY TO EEOC BASED ON CLAIMANT'S CONDUCT

The EEOC admits it is bringing this lawsuit on behalf of claimants, Gliotti and Rylance. Ordinary judicial principles including res judicata, mootness and mitigation apply to EEOC claims limiting the relief the EEOC can seek on behalf of the claimant. *EEOC v. Waffle House*, 534 U.S. 279 (2002). Indeed, a claimant's conduct limits the relief that the EEOC may obtain. *Id*. "If, for example, he [the claimant] had failed to mitigate his damages, or had accepted a monetary settlement, any recovery by the EEOC would be limited accordingly." *Id.* (citing *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231-232, (1982) (Title VII claimant "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied"); *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1542 (9th Cir. 1987) (employee's settlement "rendered her personal claims moot"); *EEOC v. U.S. Steel Corp.,* 921 F.2d 489, 495 (3rd Cir. 1990) (individuals who litigated their own claims were precluded by res judicata from obtaining individual relief in a subsequent EEOC action based on the same claims). If the ordinary judicial principles listed above apply to EEOC, then certainly principles such as lack of standing and judicial estoppel also apply as illustrated below. Notably, the EEOC admits that ordinary judicial principles apply to it, including collateral estoppel, and res judicata. *See* EEOC Compliance Manual, Sec. 2-VI. [3]

---

[3] "Pursuant to the doctrines of claim and issue preclusion, an individual may not relitigate a particular claim or issue in federal court that has been decided by a prior federal or state court decision. A state or federal agency decision that has not been reviewed by a court is not preclusive. Likewise, an unreviewed decision by an arbitrator or an unreviewed grievance decision is not preclusive. However, the charging party may be bound by a voluntary, post-dispute agreement to arbitrate. The charging party may also be bound by a settlement. If a claim or issue cannot be litigated in federal court, then it serves little purpose for the EEOC to investigate the claim or issue on the merits. **Thus, the Commission usually applies preclusion principles in the same manner as a federal court.** A court decision has the

C. **EEOC LACKS STANDING TO PURSUE MONETARY DAMAGES ON BEHALF OF GLIOTTI**

A pre-petition discrimination claim is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it. *Parker v. Wendy's Intern., Inc.* 365 F.3d 1268, 1272 (11th Cir. 2004). (citing *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003)). Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition. *Parker v. Wendy's,* 365 at 1272; (citing 11 U.S.C. § 541(A)(1) (providing that the bankruptcy estate includes "all legal or equitable interest of the debtor (including a discrimination claim) in property as of the commencement of the case")). Such property includes causes of action belonging to the debtor at the commencement of the bankruptcy case. *Parker v. Wendy's,* 365 at 1272; (citing *Barger,* 348 F.3d at 1292). Thus, a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the **only party** with standing to prosecute causes of action belonging to the estate. *Parker v. Wendy's,* 365 at 1272 (citing 11 U.S.C. § 323 and *Barger,* 348 F.3d at 1292).[4]

Exactly like the Plaintiff in *Parker*, Gliotti filed a claim for discrimination against her former employer (Gliotti filed a Charge of Discrimination with the EEOC asserting violations of Federal and State law) and then filed a petition for relief under Chapter 7 bankruptcy. Exactly

---

potential of having a preclusive effect if it involved some of the same facts, or raised some of the same issues, in the EEOC charge." *See* EEOC Compliance Manual § 2-VI.

[4] Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code. *Parker v. Wendy's,* 365 at 1272; (citing 11 U.S.C. § 554(a)-(c)). At the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings remains the property of the estate. *Parkers v. Wendy's,* 365 at 1272; (citing 11 U.S.C. § 554(d)). Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate. *Parker v. Wendy's,* 365 at 1272; (citing *Mobility Systems & Equip. Co. v. United States,* 51 Fed. Cl. 233, 236 (Fed. Cl. 2001) (citing cases); *and Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 525-26 (8th Cir.1991)).

like the Plaintiff in *Parker*, Gliotti made inconsistent statements under oath and did not list her discrimination claim against Wal-Mart as a potential asset. Like the Plaintiff in *Parker*, the United States District Court then granted Gliotti a no asset discharge. Several months later, Trustee Woodward then requested that Gliotti's bankruptcy be re-opened because she had discovered Gliotti's sexual harassment claim against Wal-Mart. Trustee Woodward requested that the bankruptcy to be re-opened in order for **Trustee Woodward to proceed in the sexual harassment claim against Wal-Mart for the benefit of the creditors of the estate**. Trustee Woodward readily admitted to the Court that Gliotti's pre-petition discrimination claim against Wal- Mart is **"property of the estate."** Exactly like the discrimination claim in *Parker*, Gliotti's discrimination claim became an asset of the bankruptcy estate when she filed her petition. Assuming Trustee Woodward did not know about the pre-petition claim and has made no false or inconsistent statements to under oath in a prior proceeding, she is now the real party in interest in Gliotti's discrimination suit.[5] As such, the EEOC lacks standing to pursue monetary damages on behalf of Gliotti. *See Parker v. Wendy's*, 365 F.3d at 1272.[6]

> D.  **EEOC IS JUDICIALLY ESTOPPED FROM SEEKING MONETARY DAMAGES ON BEHALF OF GLIOTTI**

In the unlikely scenario where Trustee Woodward intervenes and recovers more than an amount in this case that would satisfy all creditors of the estate, judicial estoppel should be invoked to limit any recovery to **only** that amount in order to prevent an undeserved windfall from devolving on the non-disclosing debtor (Gliotti). *Parker v. Wendy's*, 365 F.3d at 1273 n.4. (citing *Barger v. City of Cartersville*, 348 F.3d 1289, at 1292-93 (11th Cir. 2003)).

---

[5] However, Trustee Woodward advised the Court that she would pursue this claim on behalf of the creditors and has not intervened in this case as she implicitly advised the Bankruptcy Court that she would.

[6] The EEOC does have standing to pursue injunctive relief. *Parker v. Wendy's*, 365 F.3d at 1273, n 4.

Judicial estoppel is an equitable doctrine that precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by a party in a previous proceeding. *Barger v. City of Cartersville*, 348 F.3d at 1293 (holding judicial estoppel applied to plaintiff that failed to disclose pre-petition discrimination claim and dismissing her monetary claims with prejudice) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002) ("the doctrine exists to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.")) *Id.* The rule in this Circuit is that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court. *Barger v. City of Cartersville*, 348 F.3d at 1296 (citing *De Leon v. ComCar Industries, Inc.*, 321 F.3d 1289 at 1291 (11th Cir. 2003) (affirming application of judicial estoppel to plaintiff who filed discrimination claim and then filed petition for bankruptcy)).

Like the Plaintiffs in *Burnes* and *Barger*, Gliotti (1) hired three attorneys that specialized in employment law, and then filed a Charge of Discrimination with the EEOC (and was pursuing her employment discrimination claim at the time she filed her bankruptcy petition);[7] (2) never listed the discrimination claim as an asset when she filed her petition; (3) omitted any reference to the claim against Wal-Mart in her Financial Affairs (or Schedules); (4) signed under penalty of perjury to verify that the statement was true and correct (which was of course false); and (5) received a "no asset" discharge from the bankruptcy court, never advising the Court, Trustee Woodward or the creditors of the pending claim.

---

[7] Notably, Gliotti attended an EEOC Mediation for her discrimination claim against Wal-Mart with her attorneys approximately one (1) month after her petition for bankruptcy was filed and approximately two (2) months before she was granted a discharge.

Here, Gliotti's failure to disclose her claim against Wal-Mart was both intentional and deliberate, and the EEOC should be judicially estopped from seeking monetary damages on her behalf. Gliotti's manipulation can be inferred from the record because she had knowledge of her claim against Wal-Mart and a motive to conceal it. *Barger v. City of Cartersville*, 348 F.3d at 1294. Gliotti filed her Charge of Discrimination against Wal-Mart just days before filing her petition for bankruptcy. When questioned about her manipulation about her failure to disclose her claim, Gliotti admitted she had failed to disclose it, and testified, "they were aware of that."[8] It appeared that Gliotti was attempting to allege that she disclosed her claim to her attorneys representing her in her discrimination claim and her bankruptcy attorney (as if to justify her omission by blaming them). In *Barger*, the Eleventh Circuit held that an attorney's omission is no panacea. *Id.* at 1295 (the foremost responsibility was for [Gliotti] to fully disclose her assets). *Id.* at 1296. Finally, the fact that Trustee Woodward advised the Court that she had "discovered" the sexual harassment claim against Wal-Mart months after the discharge further shows that Gliotti had intentionally and deliberately manipulated the Bankruptcy Court all along.

Gliotti is, and has always been, represented by counsel in her bankruptcy action and her discrimination claim and knew or should have known of her duty to disclose and had a motive to deny the existence of this litigation when filing for bankruptcy protection. Federal bankruptcy law requires that debtors seeking bankruptcy protection disclose all assets or potential assets to the bankruptcy court, including all causes of action or potential causes of action. 11 U.S.C. § 521(1) AND § 541(A)(7); *In re Furgeson*, 263 B.R. 28 (Bankr. N.D.N.Y. 2001) (§ 541 includes causes of action accruing to the debtor and claims by the debtor against third parties). A debtor need not know all the facts or even the legal basis for the cause of action; rather, so long as the

---

[8] (Gliotti at 141.)

debtor has enough information to suggest that he or she may have a possible cause of action, then that is a "known" cause of action that must be disclosed. *In re Coastal Plains*, 179 F.3d 197 (5th Cir. 1999) (quoting *Union Carbide Corp. v. Viskase Corp.*, 183 B.R. 812, 821 n. 17 (Bankr. N.D. Ill. 1995)). Thus, "it goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Id.* To allow Plaintiff to seek monetary damages on Gliotti's behalf although Gliotti took divergent and irreconcilable positions would allow Gliotti to play "fast and loose" with the judicial system. *Id.*

As illustrated above, Gliotti has attempted to disregard the truth for personal gain and she should not be allowed to further benefit from her intentional misrepresentations. Accordingly, Defendant respectfully submits that the Plaintiff is judicially estopped from pursuing monetary damages on Gliotti's behalf.

    E.    **RYLANCE'S FAILURE TO MITIGATE HER DAMAGES**

The back pay remedy is explicitly limited by a duty to mitigate and is reducible by the plaintiff's interim earnings, or by the amount the plaintiff would have earned with reasonable diligence. *See* 42 U.S.C.A. § 2000E-5(G)(1). (Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.) *Id.* In *Ford Motor Co. v. EEOC,* the United States Supreme Court held that an unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize their damages. *Ford Motor Co. v. EEOC*, 458 U.S. at 231. "This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment." *Id.* A claimant forfeits her right to back pay if she refuses a job substantially equivalent to the one she was denied. *Id.* An employer charged with unlawful discrimination can toll the accrual of back pay liability by unconditionally offering

the claimant the job she sought and thereby offering her an opportunity to minimize her damages. *Id*. If a claimant fails to mitigate her damages any recovery by the EEOC would be limited accordingly. *See EEOC v. Waffle House*, 534 U.S. 279 at 766 (failure to mitigate is an ordinary judicial principle that may apply to an EEOC claim).

It is undisputed that Rylance rejected two (2) unconditional offers of reinstatement to her same position, at the same rate of pay, with benefits, costs and attorneys' fees on or about January 28, 2003 and March 12, 2003. It is undisputed that Wal-Mart's unconditional offers (1) allowed Rylance the choice to return to any Store she wanted including but not limited to Store No. 528; (2) did not affect her wages; and (3) did not require Rylance to abandon her Title VII claims. It is also undisputed that the first unconditional offer of reinstatement advised Rylance that she would have no contact with the alleged harasser, and that any retaliation against her would not be tolerated. It is undisputed that when Rylance rejected the second unconditional offer of reinstatement, she knew that the alleged harasser was no longer employed. Rylance admitted that she (unreasonably) rejected this unconditional offer because she had heard from a girl named "Peggy" in July 2002 that Gliotti had started a rumor about Store Manager Dennie Stephens allegedly having an affair with a girl named "Maria." Rylance then heard another "rumor" that Gliotti had received Coachings for Improvement because her Department was in bad shape, and then Rylance allegedly feared retaliation. However, Rylance's rejection, based upon an unsubstantiated rumor that was comprised solely of hearsay upon hearsay, clearly was not reasonable.

F. **AFTER RYLANCE REJECTS UNCONDITIONAL OFFERS OF REINSTATEMENT SHE THEN REMAINS VOLUNTARILY IDLE TO THIS DAY**

As noted, the back pay remedy is explicitly limited by a duty to mitigate and is reducible by the plaintiff's interim earnings, or by the amount the plaintiff would have earned with

reasonable diligence. *See* 42 U.S.C.A. § 2000E-5(G)(1); *Ford Motor Co. v. EEOC,* 458 U.S.C. at 231. "This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment." *Id.* After Rylance resigned from her employment with Wal-Mart in January 2003, Rylance admits that (1) she drew unemployment compensation from Wal-Mart for 8 months; (2) has not worked since she left Wal-Mart in January 2003; and (3) has only applied for two jobs since she left Wal-Mart, and turned one of the offers for employment down because she did not like the hours. Notably and importantly, Rylance admits that the reason she had not applied for employment is because her husband told her she needs to be available to pick the children up from school. Applying for two jobs in two-and-a-half years is hardly "reasonably diligent." The fact of the matter is the record shows she has essentially removed herself from the job market and failed to even try to obtain employment. As illustrated above, Rylance's unreasonable rejection of two unconditional offers of employment and then failure to even try to obtain work has forfeited her right to back pay and/or front pay. As such, Wal-Mart requests that Plaintiff not be allowed to seek monetary relief in the form of back pay or front pay on Rylance's behalf.[9]

WHEREFORE, Defendant Wal-Mart Stores, Inc. respectfully requests that this Court grant partial summary judgment in its favor and against Plaintiff.

---

[9] Additionally, not only has Rylance not complied with the statutory requirements of 42 U.S.C.A. § 2000E-5(G)(1), she also admits that by only applying for two positions in 2004 (and none in 2003), she failed to comply with the statutory requirements that made her eligible for unemployment compensation. *See* § 443.091(d), Fla. Stat. Ann. (2005)(d)(stating that in order for an individual to remain eligible for unemployment compensation the individual must participate in reemployment services, such as job search assistance services, whenever the individual has been determined, by a profiling system established by rule of the Agency for Workforce Innovation, to be likely to exhaust regular benefits and to be in need of reemployment services.)

Respectfully submitted,

FORD & HARRISON LLP


By:    /s/ Kelly H. Chanfrau
        Peter Reed Corbin
        Florida Bar No. 198374
        Kelly Hagan Chanfrau
        Florida Bar No. 560111

        For the Firm

101 E. Kennedy Boulevard
Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Attorneys for Defendant
Wal-Mart Stores, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Delner Franklin-Thomas
>Equal Employment Opportunity Commission
>Miami District Office
>2 South Biscayne Boulevard, Suite 2700
>Miami, Florida  33131
>
>Carla Von Greiff
>EEOC Senior Trial Attorney
>Equal Employment Opportunity Commission
>501 East Polk Street, Suite 1000
>Tampa, Florida  33602

>_____/s/ Kelly H. Chanfrau_____
>            Attorney

TAMPA:202780.1