UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

WAL-MART STORES, INC.,

Defendant.

Case No. 8:04-cv-01862-SDM-MSS

**DEFENDANT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Fed. R. Civ. P. 56,[1] Defendant Wal-Mart Stores, Inc. (hereinafter "Wal-Mart" or "Defendant") moves for partial summary judgment against Plaintiff United States Equal Employment Opportunity Commission (hereinafter "EEOC" or "Plaintiff EEOC"), and requests that the Court find (1) Plaintiff EEOC's claims seeking relief on behalf of a "class of similarly situated individuals" be dismissed as the EEOC has advised Wal-Mart that it is not seeking relief on behalf of any claimant in this matter other than Virginia Rylance and Linda Gliotti (hereinafter Ms. Rylance and Ms. Gliotti); and (2) Plaintiff EEOC is not entitled to recover punitive damages against Wal-Mart on behalf of Ms. Rylance or Ms. Gliotti.[2]

---

1 The Statement of Undisputed Facts is taken from the deposition transcript and exhibits of Claimant Virginia Rylance, Claimant Linda Gliotti, Assistant Manager Mark Klein, Assistant Manager Kevin Paul, Lead Associate Denise Maxwell, and Store Manager Dennie Stephens. Wal-Mart offers "facts" from Ms. Rylance's and Ms. Gliotti's depositions for purposes of this Motion only and otherwise may dispute them.

2 Wal-Mart filed its initial Motion for Partial Summary Judgment on September 7, 2005, alleging that claimant Gliotti's claims for monetary relief are barred pursuant to the doctrines of judicial estoppel and standing, and that claimant Rylance's claims for back pay and front pay are

## I. STATEMENT OF THE CASE

Plaintiff EEOC brings this action against Wal-Mart to recover monetary damages, declaratory and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and Title I of the Civil Rights Act ("Title I") (Complaint at "Nature of the Action"). The EEOC alleges that the alleged violations occurred at one solitary store – Wal-Mart Store No. 528 (located in Bradenton, Florida). The EEOC has alleged in its Complaint that, at Store No. 528: (1) Ms. Rylance suffered a sexually hostile work environment and a constructive discharge; (2) Ms. Gliotti suffered a sexually hostile work environment; and (3) other similarly situated female employees of Wal-Mart suffered a sexually hostile work environment. On behalf of Ms. Rylance, the EEOC seeks monetary damages in the form of back pay, job search expenses and/or front pay, past and future pecuniary losses, including but not limited to medical expenses and out of pocket losses, compensatory and punitive damages. (Complaint, Prayer for Relief at ¶ C, D, E, and F.) On behalf of Ms. Gliotti (who is still employed with Wal-Mart to this day), the EEOC seeks monetary relief in the form of past and future pecuniary losses, including but not limited to medical expenses and out of pocket losses, compensatory damages and punitive damages. (Complaint, Prayer For Relief at ¶ D, E, and F; Gliotti at 78.) On behalf of other similarly situated female employees, the EEOC is seeking monetary damages in the form of back pay, job search expenses and/or front pay, past and future pecuniary losses, including but not limited to medical expenses and out of pocket losses, compensatory and punitive damages. (Complaint, Prayer for Relief at ¶ C, D, E, and F.) On behalf of Ms. Rylance, Ms. Gliotti and other similarly situated individuals, the EEOC has alleged in its Complaint that it is seeking the maximum statutory caps established under 42 U.S.C. § 1981a.

---

barred because of her denial of Wal-Mart's offers of reinstatement with back pay. Wal-Mart's prior Motion remains pending before the Court.

Wal-Mart moves for summary judgment as a matter of law in its favor with respect to (1) Plaintiff EEOC's claims for relief (monetary and otherwise) on behalf of other similarly situated individuals because counsel for the EEOC has now advised that the EEOC is not seeking relief on behalf of any other similarly situated individuals in this matter; and (2) the EEOC's claim for punitive damages on behalf of Ms. Rylance and/or Ms. Gliotti. The grounds for this Motion are fully argued in the Memorandum of Law filed herewith and based upon the following Statement of Undisputed Facts taken from the record.[3]

## II. PLAINTIFF EEOC'S CLAIMS FOR RELIEF ON BEHALF OF ANY SIMILARLY SITUATED INDIVIDUALS SHOULD BE DISMISSED

**Counsel for the EEOC advised counsel for Wal-Mart that the EEOC is not seeking relief on behalf of any other alleged similarly situated individuals**

On November 22, 2005, counsel for the EEOC advised counsel for Wal-Mart that the EEOC would not be seeking relief for any alleged other similarly situated individuals in this action. In other words, counsel for the EEOC advised that the Commission was only seeking relief on behalf of Ms. Rylance and Ms. Gliotti in this matter. This announcement came as no surprise as the evidence developed in this action is completely devoid of any basis for "class" relief beyond that sought for the two individual claimants. As such, any and all claims brought by the EEOC seeking relief on behalf of any alleged other similarly situated individuals in this matter should be dismissed. *See EEOC v. Carrols Corp.*, 2005 WL 928634 (N.D.N.Y. 2005) (Summary judgment granted for the employer in sexual harassment action with respect to the EEOC's "pattern and practice" allegations of sexual harassment where the evidence showed less than 1% of the employer's female employees had complained of harassment).

---

[3] However, with regard to Plaintiff EEOC's claims on behalf of similarly situated individuals, Wal-Mart will not be citing to the record, because counsel for the EEOC has advised counsel for Wal-Mart that the EEOC is not seeking relief on behalf of any similarly situated individuals in this action.

## III. STATEMENT OF UNDISPUTED FACTS AS TO PLAINTIFF EEOC'S CLAIMS FOR PUNITIVE DAMAGES

**Background**

1. Wal-Mart has more than 3,700 facilities in the United States, one of them being Store No. 528, which is located in Bradenton, Florida. This Store employs more than 500 associates.

**Chain of Command at Store No. 528**

2. The managerial chain of command at Store No. 528 (and all Wal-Mart Stores) is (1) Store Manager, (2) Co-Manager, (3) Assistant Manager, and (4) Grocery Support Manager/Department Manager. (Paul at 53-54).

**Wal-Mart's Anti-Discrimination policy complies with Title VII and has been recognized by the Eleventh Circuit**

3. At all times material herein (including from 2001 to the present), Wal-Mart has maintained a Harassment and Inappropriate Conduct policy and Complaint Procedure. All managers and associates have access to the policy, and are given training on enforcing the policy. (Klein at 19). Ms. Rylance and Ms. Gliotti both admit they received this policy in their Associate Handbooks at the beginning of their employment and/or during their employment. (Rylance at 24, Ex. 3; Gliotti at 29, Ex. 5). Ms. Rylance and Ms. Gliotti both admit that during their employment and at all times relevant, they knew and understood the Harassment and Inappropriate Conduct policy, including the <u>important</u> complaint reporting aspect of the policy which states:

> **Harassment or Inappropriate Conduct of any type, whether sexual, ethnic or racial, is not tolerated at Wal-Mart. Wal-Mart is committed to maintaining a work environment that is free of unlawful harassment as well as other inappropriate conduct, regardless of whether the conduct rises to the level of unlawful harassment. We want to provide a work environment where everyone is comfortable.**

> **Any negative or stereotypical comment or action, whether welcome or unwelcome, aimed at an individual's gender, race, religion, physical or mental disability, physical appearance, age, marital status, national origin, color or sexual orientation is inappropriate at Wal-Mart and will not be tolerated.**
>
> **Associates who engage in any type of harassment or inappropriate conduct on Wal-Mart property, at Wal-Mart sponsored functions, or while traveling on behalf of the company, whether "on the clock" or not will be subject to disciplinary action up to and including termination.**
>
> **Associates who are subjected to conduct prohibited under this policy are encouraged to report their concern to any salaried member of management. Prompt action will be taken and no retaliation will occur against the Associate making the report. All allegations of harassment/inappropriate conduct will be investigated. Confidentiality will be maintained to the extent that is practical. Appropriate action will be taken to eliminate such conduct and to ensure there will be no recurrence of the conduct. If you, or someone you work with, have been a victim of harassment or inappropriate conduct, you should immediately report the offensive conduct to a salaried member of management. You may also contact your Regional Personnel Manager, the People Group, or the Ethics Hotline (1-800-WMETHIC).**

(Rylance at 23-24, Ex. 3; Gliotti at 29, Ex. 5).

4. As with all associates and managers, Wal-Mart gave Ms. Rylance and Ms. Gliotti mandatory <u>*computer based training*</u> specifically on Wal-Mart's harassment and inappropriate conduct policy and complaint reporting procedure. (Rylance at 25; Gliotti at 29-30; Klein at 25).[4]

**Wal-Mart's also has the Open Door Policy**

5. In addition, Wal-Mart maintains an "**Open Door Policy,**" which encourages all associates to bring any concern to <u>any level of management</u> in the Company (including the

---

[4] The Eleventh Circuit has recognized Wal-Mart's non-discrimination policy in a case where it held that an employee was not entitled to punitive damages: "Wal-Mart has a nondiscrimination policy to encourage employees to refer incidents of discrimination up the chain of command until the matter is resolved." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317 (11th Cir. 1999).

District Manager, Regional Personnel Manager, and even Wal-Mart's President), without fear of suppression or retaliation. Ms. Rylance and Ms. Gliotti have both admitted that they were aware of the Open Door Policy. (Rylance at 25-27; Gliotti at 30-32).

**Background as to Ms. Rylance, Ms. Gliotti and the alleged harasser, Sean Dolan**

6. Store No. 528 hired Ms. Rylance in April 2001 as an Overnight Cashier and quickly promoted her, first to the position of Customer Service Manager, and then to the position of Department Manager over the Health and Beauty Aids Department. (Rylance at 21-22; 30; 36). Store No. 528 gave Ms. Rylance consistent raises and excellent evaluations during her tenure. (Rylance at 27-36).

7. Store No. 528 hired Ms. Gliotti in 1997 as a Price Verification Associate. (Gliotti at 16; 25). In 1998, Store No. 528 gave Ms. Gliotti a promotion to the position of Department Manager over the Domestics Department. (Gliotti at 24).

**Mr. Dolan was never Ms. Rylance's or Ms. Gliotti's supervisor**

8. On or about October 7, 1998, Store No. 528 hired Sean Dolan as a Stocker. Store No. 528 promoted Mr. Dolan to an hourly manager position, Grocery Support Manager. (Stephens at 93). Store No. 528 forced Mr. Dolan's resignation on March 6, 2005. (Stephens Ex. 8).

Mr. Dolan, Ms. Gliotti and Ms. Rylance worked in three (3) separate and distinct departments, and Mr. Dolan did not supervise either Ms. Rylance or Ms. Gliotti. (Rylance at 47; Gliotti at 79-80). Both the Department Manager Position and the Grocery Support Manager position are hourly (not salaried) managerial positions. (Klein at 25). Ms. Gliotti, Ms. Rylance, and Mr. Dolan all had the same amount of managerial authority, and all could have been promoted to the Assistant Manager position. (Klein at 52).

**Ms. Gliotti alleges that Mr. Dolan engaged in the following sexual harassment**

9. In December 2001, Ms. Gliotti alleges that she and Mr. Dolan (whom she knew was married at the time) had consensual sexual intercourse at her home one evening. (Gliotti at 81-83). On the Monday following the night she and Mr. Dolan had sexual intercourse, Ms. Gliotti alleges that she found out Mr. Dolan had another girlfriend and decided Mr. Dolan was "like all the rest." Id. Ms. Gliotti then alleges that after she learned Mr. Dolan had another girlfriend (apparently because he was showing her picture around the Store), Mr. Dolan: (1) inappropriately grabbed Ms. Gliotti's buttocks and vagina on a daily basis; and (2) called attention to his erect penis, while saying "This is what you do to me." (Gliotti at 84-93; Maxwell at 26).

**Ms. Gliotti alleges she made two reports of sexual harassment – one to a Co-Manager and one to an Assistant Manager at Store No. 528**

10. Ms. Gliotti alleges that at some point in 2000, she complained to Co-Manager Derek Boswell (one step below Store Manager) that Mr. Dolan had "kissed her on the lips," although she readily admits she did not feel sexually harassed at this time. (Gliotti at 84-85; 96). This is of course prior to the evening she and Mr. Dolan had consensual sex. She told Mr. Boswell nothing else at this time and admits that she believes he took care of her complaint. (Gliotti at 96). Ms. Gliotti then alleges that in early Spring 2002 (shortly after she had consensual sex with Mr. Dolan and then found out he had another girlfriend), she complained to Assistant Manager Kevin Paul (two steps below Store Manager) that Mr. Dolan was "harassing" her. (Gliotti at 96-97). Mr. Paul asked Ms. Gliotti to write a statement outlining the harassment,

but she refused. (Gliotti at 97). She alleges that Mr. Paul said he would "take care of it" but the harassment continued. (Gliotti at 99).[5]

11. Although she admits she knew about the sexual harassment policy and complaint reporting procedure, Ms. Gliotti also admits she never reported any sexual harassment to Store Manager Dennie Stephens, her Store's District Manager, the Store's Regional Personnel Manager, the Corporate Ethics Hotline, the People Group, or to anyone else (aside from the disputed reports referenced above in Paragraph 10).

**Ms. Gliotti denied she was sexually harassed by Mr. Dolan to the Store Manager**

12. Importantly, during Mr. Stephens' sexual harassment investigation performed as a result of Ms. Rylance's report of sexual harassment after she walked off the job on January 16, 2003, Ms. Gliotti, in response to Mr. Stephens' inquiry, flatly denied she was sexually harassed. (Gliotti at 102). She later changed her story.

**Ms. Rylance alleges that Mr. Dolan engaged in sexual harassment**

13. Ms. Rylance testified that in late 2001 and in 2002, Mr. Dolan grabbed her rear end, vagina and breasts, planted a kiss on her lips once, attempted to pull her in the steel room once, pointed to his erect penis and said, "this is what you do to me," tried to expose himself to her on one occasion, and asked her when she was going to take him home and "rape him." (Rylance at 62, 64, 66-69).

**Ms. Rylance alleges she made reports of harassment to an Assistant Store Manager and a fellow hourly Department Manager**

14. Ms. Rylance alleges that while she cannot remember the date, she first complained to Assistant Manager Mark Klein (two steps below Store Manager) that Mr. Dolan

---

[5] Mr. Paul testified that in January 2002, Ms. Gliotti was walking down the hall and said, "Sean's being an asshole," and that she said Mr. Dolan had made inappropriate non-sexual comments. (Paul at 65-66, 76-77).

was grabbing her rear end. (Rylance at 71-72). She admits that Mr. Klein told her he would take care of the problem, but she **instructed** him not to do anything because she could "handle it" and did not want Mr. Dolan to lose his job. (Rylance at 72).[6]

15.   Ms. Rylance next alleges that at some point in 2002, she again complained to Mr. Klein and Mr. Klein allegedly did nothing.[7] (Rylance 71-75). Then, also in 2002, Ms. Rylance alleges that she complained to fellow hourly Department Manager Denise Maxwell (three steps below Store Manager) who then had another Department Manager, Jason Reck, confront Mr. Dolan. (Rylance at 76; Maxwell at 36-42).

**Ms. Rylance walks off the job, and then reports sexual harassment for the first time to Store Manager Dennie Stephens who immediately begins an investigation**

16.   Then, on January 16, 2003, Ms. Rylance went to Mr. Stephen's office to make a report of harassment.[8] (Stephens at 33). Mr. Stephens asked Ms. Rylance if she would mind waiting a few minutes as he had just paged another associate to his office. (Rylance at 78; Stephens at 30, 33-34). Ms. Rylance would not wait, and walked off the job. (Rylance 78-80; Stephens at 30). A few minutes later, when Mr. Stephens could not find Ms. Rylance, he immediately called her at home and asked her to call him. (Rylance at 81; Stephens at 30). She did not return his call. Id. He tried again the very next day. (Rylance at 82; Stephens at 31). Ms. Rylance then returned his call, and Mr. Stephens made arrangements to meet with her the very next day, on Saturday, January 18, 2003. (Rylance at 83; Stephens at 31). On Saturday, January 18, 2003, Ms. Rylance came back into the Store and complained to Mr. Stephens that

---

[6] Prior to working at Wal-Mart, Ms. Rylance and Mr. Dolan dated for a brief period of time. (Rylance at 88).
[7] Mr. Klein testified that Ms. Rylance never made sexual harassment reports to him. (Klein at 102).
[8] Much like Ms. Gliotti, Ms. Rylance never reported her concerns to the Store Manager and only did so after she had already walked off the job on January 16, 2003.

Mr. Dolan had harassed her. (Rylance at 83-89; Stephens at 31). Mr. Stephens asked Ms. Rylance to provide a written statement, and she initially agreed she would. (Rylance at 83-89). That very same weekend, Ms. Rylance hired her attorneys in California and subsequently refused to provide any written statement. (Rylance at 86).

17. The following Monday, January 20, 2003, Mr. Stephens began his investigation into Ms. Rylance's allegations. (Stephens at 46). During his investigation, he interviewed Ms. Gliotti, who denied that either she or Ms. Rylance were harassed by Mr. Dolan. (Gliotti at 102). Within ten days of Ms. Rylance's first and only complaint to Store Manager Dennie Stephens, on January 28, 2003, Wal-Mart then made the first of two (2) undisputed unconditional offers of reinstatement with back pay to her same position, at the same rate of pay, with benefits, costs and attorneys' fees, and at any Wal-Mart Store of her choice. (Rylance at 90-91, Ex. 12). The second unconditional offer occurred on March 12, 2003. (Rylance at 91-92, Ex. 13). It is undisputed that Wal-Mart's unconditional offers (1) allowed Ms. Rylance the choice to return to any Store she wanted including but not limited to Store No. 528; (2) did not affect her wages; and (3) did not require Ms. Rylance to abandon her Title VII claims.

18. As previously explained, Mr. Dolan was subsequently suspended on February 27, 2003 and called to the Store for termination on March 6, 2003. (Stephens at 58, 73-74). However, when Mr. Dolan reported to the Store to be terminated, he handed in a letter of resignation denying he harassed any co-worker at Wal-Mart. (Stephens at 57, 73-74; Ex. 7).

## IV. MEMORANDUM OF LAW

### A. STANDARD OF REVIEW

Summary judgment will be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Defendant has the initial burden of presenting sufficient

evidence demonstrating the absence of a genuine issue of material fact. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 324 (1984). To avoid summary judgment, Plaintiff cannot rest on the pleadings alone, but must present "specific facts showing a genuine issue of material fact for trial." *Celotex,* 477 U.S. at 324.

**B. PLAINTIFF EEOC'S CLAIMS ON BEHALF OF ALLEGED SIMILARLY SITUATED INDIVIDUALS MUST BE DISMISSED**

In good faith, and in accordance with Fed. R. Civ. P. 56 and Local Rule 4.04(b),[9] counsel for Wal-Mart states that there is no issue of material facts for trial with regard to Plaintiff EEOC's claims on behalf of any alleged similarly situated individuals because the EEOC has confirmed that it is not pursuing any "similarly situated" claims beyond the individual claims of Ms. Rylance and Ms. Gliotti. Thus, any and all claims on behalf of any similarly situated individuals in this matter should be dismissed. *EEOC v. Carrols Corp., supra.*

**C. WAL-MART STORES, INC. HAS NOT ACTED WITH MALICE OR RECKLESS INDIFFERENCE TOWARDS MS. RYLANCE OR MS. GLIOTTI**

Plaintiff EEOC's Complaint demands that punitive damages be awarded to it on behalf of Ms. Gliotti and Ms. Rylance, and against *Wal-Mart Stores, Inc*. (the company). Title VII limits punitive damages awards to cases of intentional discrimination where there is evidence of "malice" or "reckless indifference" in the actor's (Wal-Mart's ) state of mind. 42 U.S.C. § 1981a(b)(1). Here, the EEOC has not shown that Wal-Mart Stores, Inc. had the state of mind necessary to award punitive damages in this case.

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with **malice** or with **reckless indifference** to the federally protected rights of an aggrieved individual. *Id.*

---

[9] Plaintiff EEOC never moved for a determination under Rule 23(c)(1).

As established by the United States Supreme Court in *Kolstad v. American Dental Ass'n.*, 527 U.S. 526 (1999), to sustain a claim for punitive damages, a plaintiff must come forward with competent evidence that the conduct complained of rises to a level which would warrant putting the claim for punitive damages to a jury — that Wal-Mart acted with malice or reckless indifference to Ms. Gliotti's and/or Ms. Rylance's rights. *See also Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (applying the *Kolstad* standard to a hostile work environment claim.) The *Kolstad* court held that employees pursuing actions for intentional discrimination against employers, must satisfy a higher standard of proof to qualify for punitive damages after first establishing a right to recover compensatory damages. In *Kolstad*, a female employee sued her employer after the employer promoted a male employee to a vacated position instead of her. The female employee argued the employer's decision to promote the male employee was an act of employment discrimination and the entire selection process was a sham. The Court held that a plaintiff must establish that his or her employer acted with **malice** or **reckless indifference** to recover punitive damages in an intentional discrimination case. *Id.*

The Eleventh Circuit has squarely held that notice of discrimination to two (2) Wal-Mart Store Managers does not serve as notice to the corporation because they were not sufficiently high enough up the corporate ladder. *Miller v. Kenworth*, 277 F.3d at 1279 (citing *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999). The Eleventh Circuit has also held that punitive damages will ordinarily not be assessed against employers with only constructive knowledge of harassment; rather, punitive damages may only be considered where the **discriminating employee** was high up the corporate hierarchy or where higher management countenanced or approved his behavior. *Miller v. Kenworth*, 277 F.3d at 1280 (citing *Dudley v.*

*Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323) (plaintiff failed to prove that Wal-Mart, the company, had the kind of notice and engaged in the kind of egregious acts required to award punitive damages).

The United States Supreme Court held in *Kolstad*:

> Recognizing Title VII as an effort to promote prevention ... we agree that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's "good faith efforts to comply with Title VII."

*Id.* at 545.

The Court further explained:

> Where an employer has undertaken such good faith efforts at Title VII compliance, it "demonstrates that it never acted in reckless disregard of federally protected rights."... With regard to sexual harassment, "[f]or example, Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms." *Burlington Industries, Inc.*, 524 U.S. at 764. The purposes underlying Title VII are similarly advanced where employers are encouraged to adopt anti-discrimination policies and to educate their personnel on Title VII prohibitions.

*Id.* at 545.

Here, there exists no evidence that Wal-Mart, the company, acted with malice or reckless indifference to Ms. Gliotti's or Ms. Rylance's rights. Ms. Rylance and Ms. Gliotti allege that Store No. 528's Grocery Support Manager (who ranks three (3) steps below the Store Manager in the chain of command), Sean Dolan, sexually harassed both of them in the form of sexual comments, gestures and touching for a little over a year. Ms. Rylance also alleges she was constructively discharged when she walked off the job on January 16, 2003.

Ms. Gliotti alleges that, in 2000, she reported to Store No. 528 Co-Manager Derek Boswell (one step below the Store Manager in the chain of command) that Mr. Dolan kissed her on the lips and that she **believes** he took care of her complaint. It is also undisputed that this

alleged kiss on the lips occurred during a time period when Ms. Gliotti did not believe she was being sexually harassed and was prior to the evening in December 2001 when she engaged in consensual sexual intercourse with Mr. Dolan. It is also undisputed that in the Spring of 2002, Ms. Gliotti alleges that she reported Mr. Dolan once to Assistant Manager Kevin Paul (two steps below the Store Manager) and that Mr. Paul asked her to write a statement, but she refused. Finally, it is undisputed that Ms. Gliotti never reported Mr. Dolan to anyone higher in the corporate chain than the Store Manager at Store No. 528. Importantly, it is undisputed that in January 2003, and during Store Manager Dennie Stephens' sexual harassment investigation conducted after Ms. Rylance walked off the job, he asked Ms. Gliotti if she had been sexually harassed by Mr. Dolan and she denied that she had ever been sexually harassed by Mr. Dolan (or that Ms. Rylance was). Ms. Gliotti later changed her story. Finally, it is undisputed that Ms. Gliotti is still employed with Wal-Mart to this day.

As to Ms. Rylance, it is undisputed that like Ms. Gliotti, she never reported any sexual harassment to anyone higher in the corporate chain of command than the Store Manager at Store No. 528 (and she only reported that she had been sexually harassed by Mr. Dolan two days after she walked off the job). Both Ms. Rylance and Ms. Gliotti admittedly knew the sexual harassment policy and knew that they could make reports of sexual harassment to the Regional Personnel Manager, the People Group, or the Ethics Hotline (1-800-WMETHIC) and admittedly neither one did so.

Ms. Rylance alleges that she made prior reports to Assistant Manager Kevin Paul (two steps below Store Manager) and one report to fellow Department Manager Denise Maxell (three steps below Store Manager).

As stated by the United States Supreme Court in *Kolstad*, not only must a plaintiff show the requisite malice or reckless indifference on the part of certain individuals, the plaintiff must also impute liability for punitive damages to the employer. *Kolstad*, 527 U.S at 539. The Eleventh Circuit has squarely held that notice of discrimination to a Wal-Mart Store Manager does not constitute notice to the Company. The Eleventh Circuit has also expressly held that a Wal-Mart Store Manager (and certainly not a Grocery Support Manager) is not high enough up Wal-Mart's corporate management hierarchy, "*if* they can be said to be in the corporate management hierarchy at all – to allow their discriminatory acts to be the basis for punitive damages against the corporation." *Dudley*, 166 F.3d 1323. *See also Wilbur v. Correctional Services Corp.*, 393 F.3d 1192 (11th Cir. 2004)(citing *Miller* which relied on *Dudley*). It is undisputed in this case that the alleged harasser (former Grocery Support Manager Sean Dolan) is three steps below the Store Manager in the chain of command. It is also undisputed that the Company had no actual notice as neither Ms. Rylance or Ms. Gliotti ever reported discrimination to anyone higher in the chain of command than the Store Manager at Store No. 528. Further, once Ms. Rylance reported the harassment to the Store Manager (after she walked off the job), it is undisputed he conducted an immediate investigation. Ten days later, the Company made the first of two unconditional offers of reinstatement with back pay.

Again, there is nothing in the record that demonstrates that Wal-Mart, the Company, engaged in the discriminatory conduct because the alleged harasser was a Grocery Support Manager (three steps below Store Manager), and certainly no one in a high enough management position in the Company approved of the alleged harassing behavior by Mr. Dolan. *Miller v. Kenworth*, 277 F.3d at 1280 (citing *Dudley v. Wal-Mart*, 166 F.3d 1323). *See e.g., Wilbur v. Correctional Services Corp.*, 393 F.3d 1205.

Most importantly, there also is no dispute about Wal-Mart's efforts to comply with Title VII and protect against discrimination and harassment. First, Wal-Mart has an anti-harassment policy and procedure through which associates can report any alleged instances of discrimination or harassment. The Eleventh Circuit has held that:

> [A]**n employer is insulated from liability under Title VII for a hostile environment claim** premised on constructive knowledge of the harassment when the employer has adopted an anti-discrimination policy that is vigorously enforced, and provides **alternative avenues** of redress.

*Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1550 (11th Cir. 1997) (emphasis added). Indeed, the Eleventh Circuit has recognized Wal-Mart's non-discrimination policy in a previous case wherein it denied punitive damages. *Dudley v. Wal-Mart*, *supra,* 166 F.3d 1323. Plaintiff cannot deny the existence of Wal-Mart's anti-harassment policy or that Wal-Mart had a procedure for complaining pursuant to that policy. The EEOC also cannot deny that this policy was set forth in detail in the Associate Handbooks provided to both Ms. Rylance and Ms. Gliotti when they were hired and/or during their employment. Finally, the EEOC cannot deny that Wal-Mart required Ms. Rylance and Ms. Gliotti, and all of its managers, to submit to training on the policy. Wal-Mart's anti-discrimination policy is well disseminated, enforced, and provides alternative avenues of redress as required by *Farley*. Thus, Wal-Mart has undertaken the good faith efforts required under *Kolstad*, militating in favor of barring Plaintiff EEOC from seeking punitive damages in this case on behalf of Ms. Rylance and/or Ms. Gliotti.

WHEREFORE, on the basis of the foregoing, Defendant Wal-Mart Stores, Inc. respectfully prays that its Second Motion for Partial Summary Judgment be granted, and that judgment be entered in favor of Defendant with respect to the EEOC's claims for "similarly situated" individuals, and with respect to Plaintiff's claim for punitive damages.

Respectfully submitted,

FORD & HARRISON LLP

By: _/s/ Kelly H. Chanfrau____
Peter Reed Corbin
Florida Bar No. 198374
Kelly Hagan Chanfrau
Florida Bar No. 560111

For the Firm

101 E. Kennedy Boulevard
Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Attorneys for Defendant
Wal-Mart Stores, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Delner Franklin-Thomas
Equal Employment Opportunity Commission
Miami District Office
2 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131

Carla Von Greiff
EEOC Senior Trial Attorney
Equal Employment Opportunity Commission
501 East Polk Street, Suite 1000
Tampa, Florida 33602

____/s/ Kelly H. Chanfrau__________
Attorney

TAMPA:207504.1